**Petition of RUSSELL.**

No. 61-C-9883.

Circuit Court, Dade County.

May 18, 1962.

---

Theodore Fisher, Coral Gables, and Walters, Moore & Costanzo, Miami, for petitioners.

Philip J. Coniglio, Miami, for respondent.

PHILLIP GOLDMAN, Circuit Judge.

This cause came on for final hearing on a petition for adoption of a female infant, born out of wedlock, filed by the petitioners, David A. and Sereta K. Russell, on September 18, 1961. The petition alleges execution of a pre and post-natal consent of adoption by the respondent and natural mother. The respondent has filed an answer and objections to the petition alleging, inter alia, that neither consent was voluntarily given; that the purported post-natal consent was not executed in accordance with statutory requirements; and that it would be for the best interest of the child to be with the natural mother.

From the testimony it appears that the respondent, an unwed natural mother, became pregnant in New York. Ashamed and fearful of apprising her parents of her condition, she came to Miami. Shortly after her arrival here she sought and received guidance and comfort from her church. Through the arrangements of a local priest she was placed in the home of a widow and church member who advised and comforted respondent through her pre-natal period and a few days thereafter. This benefactor guided respondent into the hands of an eminent and reputable obstetrician who arranged with petitioners for the adoption of the subject child and cared for respondent through her pregnancy and delivery of the child.

The petitioners (who are of the same faith as the respondent), through their attorney, obtained a "Surrender and Consent of Adoption" from the respondent on July 25, 1961. It was witnessed by two persons and acknowledged. Before signing this pre-natal consent, respondent was asked if "she read the aforesaid document" (of Consent) and respondent said, "Yes." She was then asked "Do you understand it?" Respondent answered, "Yes." Again she was asked, "Do you understand what you are doing?" whereupon respondent replied, "Yes, I want to give up the child." That respondent's consent was freely and voluntarily given is further corroborated by the testimony of the notary public who took respondent's acknowledgment.

The child was born (September 12) and two days later (September 14) petitioners' attorney obtained a post-natal "Surrender and Consent for Adoption" while the respondent was still in the hospital. Respondent admitted that this consent was freely and voluntarily given however it was witnessed by only one person and was not acknowledged.

On September 15, 1961, the child was given to the petitioners and petitioners have since had custody.

It is significant that from the date of the execution of the pre-natal consent (July 25) until the morning of the discharge from the hospital (September 15) the respondent did not communicate to anyone a desire to withdraw or rescind her consent of adoption. After her discharge (and after discharge and delivery of the child to petitioners) respondent for the first time notified the hospital authorities and the doctor of her desire to keep the child. Respondent contends that when she called the hospital after her discharge the child was still at the hospital. This however is contrary to the facts as reflected by the hospital records.

Turning now to the background of the adult principals, the petitioning father is a practicing attorney in Miami and earns in excess of $8,500 per year. His wife has completed two years of college. Petitioners have purchased their own home and according to the uncontroverted testimony have a very happy home life.

The respondent (yet unwed) testified that she will return to New York and live with her parents if given custody of the child. She further testified that she will work and her parents will assist her in raising the child.

The report of its investigating representative, filed and adopted by the State Welfare Board, expressly found (1) the petitioners were suitable persons to adopt the child and implicitly found that (2) the child was a proper subject for adoption, i.e., that the respondent signed a consent of adoption and the child was in good health. However, the report recommended that the petition be dismissed and the child returned to the respondent since the respondent was "no longer in accord with the plan".

Assuming that the consent of the natural mother was lawfully obtained, the court deems the fundamental question here to be what is best for the child.

As to the validity of the consent, it is clear in Florida that a consent may be valid even though issued prior to the birth of the child. In re Adoption of Long, Fla., 56 So.2d 450 (1952). Such was the case here. The pre-natal consent conformed in all respects to the statutory requirements and it was executed voluntarily with knowledge of the effect thereof and with no fraud, duress or undue influence being practiced on the respondent.

Further, while the post-natal consent was deficient as to form it reflects at a minimum a ratification of the pre-natal consent. This is so because the testimony of the respondent natural mother

4

is to the effect that even the post-natal document was signed by her freely and voluntarily.

Consent freely and voluntarily given, and acted upon, may not be withdrawn. In Skeen v. Marx, (Fla.App. 1958), 105 So.2d 517, 518, citing with approval from Petition of Gaban, 158 Fla. 597, 30 So.2d 176, 179 (1947) it was held that —

> "The trend of the most recent authority . . . is toward the position that where a natural parent has freely and knowingly given the requisite consent to the adoption of his or her child and the adoptive parents have accepted and acted, then the consent is ordinarily binding and cannot be withdrawn."

For an interesting and informative discussion of the validity of consents see In re Adoption of a Minor, D.C. Cir., 144 F.2d 644.

Turning now to the question of what is best for the child, the court finds that the best interests of the child will be promoted by the adoption. See Young's *Out of Wedlock* (McGraw-Hill 1954), Meyer's *Studies of Children* (Kings' Crown Press 1948).

As stated by Leontine Young in her study of the problems of the unmarried mother and her child (*Out of Wedlock*, p. 160-161) —

> "Adoption is in and of itself no magic key. It is an opportunity, *the best life chance for both mother and child in the great majority of cases.* For the child it is as good and as bad as the kind of adoptive parents selected. That selection offers to social work one of its greatest opportunities and one of its greatest responsibilities. It demands the best, most skilled, the most discerning that we have. It demands that we examine over and over again our thinking, our practices, our actions and that we begin with the unmarried mother and her child." (Italics added.)

Here, the adoptive parents are among the best. The court so finds, as has been clearly established by the evidence and the report of the State Welfare Board. Beyond doubt the petitioners are fit and proper persons to adopt the child.

It is accordingly ordered and decreed that the petition for adoption be and the same is hereby granted; that the subject child born of the respondent be, and is, the legal child of the petitioners, David A. and Sereta K. Russell; and the name by which said child shall hereafter be known is: Kyle Eileen Russell.